

**FILED**

FEB 1 5 2017

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JARED ANDERSON, | CIV. #17-4020 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| DEPOSITORS INSURANCE COMPANY, A WHOLLY OWNED SUBSIDARY OF NATIONWIDE INSURANCE COMPANY, | |
| Defendant. | |

The Plaintiff, Jared Anderson, by and through his counsel of record, Michael F. Marlow, and for his cause of action against the Defendant, states and alleges as follows:

## NATURE OF THE ACTION

This is a bad faith action brought by the Plaintiff, Jared Anderson, ("Jared") against Defendant Depositors Insurance Company, a wholly owned subsidiary of Nationwide Insurance Company ("Nationwide"). Jared was severely and permanently injured when he was struck by an underinsured drunk driver while Jared was walking in a crosswalk. Nationwide insured Jared for negligent acts of underinsured drivers and Jared seeks to hold Nationwide accountable for its bad faith handling of his claim.

## PARTIES

1.    Jared is a citizen of the State of South Dakota and resident of Sioux Falls, Minnehaha County.

2.    Upon information and belief, Nationwide is a corporation duly organized and existing under the laws of the State of Iowa, with its principal place of business in the State of

1

Iowa, which at all relevant times was duly authorized to issue insurance policies in the State of South Dakota.

## JURISDICTION AND VENUE

3.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 based upon the diversity of the parties.  The amount in controversy exceeds the sum of $75,000.

4.      A substantial part of the events giving rise to this action occurred in South Dakota and, thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## FACTS

5.      Nationwide provided auto coverage to Jared pursuant to an insurance policy issued as Policy Number PPXM0044699623 ("the Policy").  *See* Exhibit A.  The Policy was fully paid, effective, and in force during the relevant dates in this matter.  The Policy provided underinsurance benefits to Jared in the amount of $500,000.

6.      Jared was an insured under the Policy.

7.      On January 30, 2016, while the Policy was in force, Jared was severely and permanently injured when he was struck by a drunk driver while Jared was walking with the right-of-way in a crosswalk. The report of the incident is attached as Exhibit B.  To date, Jared has incurred medical bills of approximately $134,000.

8.      At the time that he was struck in the crosswalk, Jared was on active duty and was on training exercises with the South Dakota National Guard in California.

9.      The collision and Jared's resulting injuries and other damages were the fault of Nathan Edsall ("Edsall"). The collision between Jared and Edsall was solely and proximately caused by Edsall's negligence. Edsall was driving while severely intoxicated, had an open bottle

of alcohol in the vehicle, and was using his cell phone at the time. Edsall was cited for aggravated driving under the influence and subsequently pled guilty to that charge.

10.     Edsall had only $15,000 in liability insurance and therefore qualified as an underinsured motorist under Nationwide's policy.

11.     On February 22, 2016, Jared, through counsel, contacted Nationwide, enclosed a copy of the crash report and asked for copies of the policy and declarations page. On subsequent dates, Jared's counsel sent letters seeking recovery of Jared's medical bills, pain and suffering and other benefits from Nationwide, in accordance with the terms of the Policy.

12.     In support of his claim, Jared's counsel submitted medical bills and medical records and additional information about his ongoing conditions and symptoms.

13.     The medical records showed Jared had a severe brain injury and lost consciousness at the scene. He suffered bleeding on his brain and was hospitalized for five days (three days in the ICU) before being released. Jared also suffered orthopedic injuries to his knee (torn meniscus) and shoulder (torn labrum).

14.     Jared remained unable to perform his military duties for 124 days after the crash.

15.     Despite its obligation to conduct an investigation of this claim, Nationwide failed to interview any witnesses or Edsall.

16.     Upon receiving the information provided by Jared, Nationwide did not interview any of Jared's medical providers or seek a third party medical review of Jared's medical condition.

17.     Upon receiving the information provided by Jared, Nationwide did not seek to interview Jared regarding his claims. Jared volunteered to be interviewed by Nationwide but Nationwide refused.

18.     Nationwide conducted virtually no investigation of this claim other than to review materials provided by Jared's counsel.

19.     Nationwide assigned five or six different adjusters to this claim in less than one year, which caused significant and unwarranted confusion and delay.

20.     Nationwide eventually offered $125,000 to completely resolve the claim, even though medical expenses alone at that time exceeded $112,000 and Jared remained off work when the offer was tendered. Nationwide refused to increase its offer even though significant additional medical expenses were incurred and disclosed to Nationwide.

21.     Nationwide failed to tender even the undisputed amount of $125,000 and improperly withheld that amount for many months after the initial offer.

22.     Nationwide claimed the $125,000 offer was justified because its policy provision excluded coverage for amounts paid by worker's compensation or similar insurance. Thus, Nationwide represented to Jared that it had no responsibility to reimburse his medical expenses.

23.     Nationwide was aware that Jared was not at work at the time of the crash, yet Nationwide refused to contact a representative of the United States Air Force who would have refuted any claim that Jared's Tri-Care benefits were in the nature of worker's compensation or similar insurance.

24.     Nationwide knew, or upon reasonable investigation should have known, that federal statutes and regulations distinguish worker's compensation and similar insurance from Tri-Care benefits. *See* 32 C.F.R. § 199.2. Nationwide knew, or upon reasonable investigation should have known, that several courts previously ruled that Tri-Care benefits are not worker's compensation or similar insurance. *See* United States v. State Farm Mut. Auto. Ins. Co., No. CIV. A. 90-1423-T, 1992 WL 229120, at *4 (D. Kan. Sept. 11, 1992) (citations and footnote

omitted); United States v. Commercial Union Ins. Grp., 294 F. Supp. 768, 771 (S.D.N.Y. 1969); United States v. United Servs. Auto. Ass'n, 312 F. Supp. 1314, 1316 (D. Conn. 1970); United States v. Gov't Emp. Ins. Co., 440 F.2d 1338, 1339 (5th Cir. 1971).

25.     Nationwide was aware that an identical policy provision attempting to exclude worker's compensation benefits was already held invalid and against public policy by the South Dakota Supreme Court in the context of an underinsured policy. *See* Isaac v. State Farm Mut. Ins. Co., 1522 NW 2d 752 (SD 1994).

26.     Nationwide also justified the $125,000 offer by claiming Jared was 20 percent contributorily negligent. Nationwide knew or, upon reasonable investigation, should have known that claim was not supported by the facts of the case and was contrary to controlling California law.

27.     In the case of LaManna v. Stewart, 530 P.2d 1073 (CA 1975), the California Supreme Court held that a pedestrian in Jared's position was not negligent as a matter of law.

> Plaintiff, in short, "was lawfully where pedestrians are expected to be found at intersections' (Schmitt, at p. 464 of 1 Cal.3d, at p. 504 of82 Cal.Rptr., at p. 32 of 462 P.2d; **429** Novak, at p. 752 of 55 Cal.2d, at p. 103 of 13 Cal.Rptr, at p. 711 of 361 P.2d; Gray, at p. 185 of41 Cal.2d, at p. 837 of 258 P.23). She had no warning of the impending danger until it was too late; nothing occurred to place her on notice that defendant was about to violate the law designed for her protection. 'It follows that plaintiff was entitled to believe (her) right of way would be respected, and was not negligent in acting on the basis of that belief.' (Schmitt, at p. 466 of 1 Cal.3d, at p. 506 of 82 Cal.Rptr., at 34 of 462 P.d.)

*Id.* At 1083.

28.     Nationwide ultimately settled the claim nearly one year after the crash for $300,000 in a mediation conducted on January 18, 2017. Prior to the mediation, Nationwide refused to increase its offer of $125,000.

29.     No new information affecting evaluation was presented at the mediation.

## COUNT ONE
### (Bad Faith)

30.     Jared hereby realleges all previous material paragraphs.

31.     Because the Policy constituted a contract of insurance between Nationwide and Jared, there existed an implied covenant of good faith and fair dealing between them.

32.     Jared suffered losses within the policy period that were compensable under the terms of the policy, provided timely notice to Nationwide of the occurrence giving rise to coverage and demanded payment for the same.

33.     Nationwide knew that there was a lack of reasonable basis for denial of the claims or acted in reckless disregard as to whether or not a reasonable basis existed for the denial of the claims.

34.     In addition to the denial of benefits, Nationwide committed bad faith against Jared in the following ways:

        a.     Unreasonably delaying the processing and handling of Jared's claims for benefits;

        b.     Failing to conduct a reasonable investigation into Jared's claims for benefits;

        c.     Falsely claiming, without any sufficient factual or legal basis, that Nationwide had no obligation to pay Jared's medical expenses since the expenses were paid by worker's compensation or similar insurance;

        d.     Falsely claiming the policy provision regarding the exclusion of worker's compensation or similar insurance was applicable in this case;

e.    Falsely claiming, without any sufficient legal or factual basis, that Jared was 20 percent contributorily negligent for this crash;

f.    Making a lowball settlement offer to its own insured and failing to alter its position when presented with additional factual evidence and legal reasoning; and

g.    Failing to pay over the benefits that Nationwide believed to be due and owing to its insured under the policy.

35.    Nationwide denied Jared's claim for benefits and coverage in violation of the implied covenant of good faith and fair dealing and thereby committed bad faith.

36.    At the time that Nationwide denied Jared's benefits, Jared's right to benefits under the terms of the Policy was not fairly debatable.

37.    At the time that Nationwide made its lowball offer of $125,000, and when it refused to increase that offer, it was not fairly debatable that Jared's claim was worth substantially more.

38.    After initially refusing to increase its lowball offer, Nationwide ultimately paid more than twice the lowball offer, even though there was no change in the factual and legal circumstances of the case.

39.    Nationwide's refusal to provide benefits and coverage and honor the plain terms of its insurance contract caused substantial damages to Jared including, but not limited to, attorney's fees, lost investment income, lost interest, financial distress and emotional distress.

40.    Nationwide used unfair and deceptive acts and practices in dealing with Jared's claims for coverage through, among other things, its failure to acknowledge and act timely on his claims, its failure to adhere to reasonable standards regarding the handling of claims, its failure

to reasonably investigate the claims, its failure to promptly provide a reasonable explanation of the basis of the denial, its failure to timely tender undisputed benefits, and its failure to promptly settle Jared's claims when liability and damages were clear.

41.     Nationwide's refusal to provide full and fair benefits and to honor the plain terms of its insurance contract was willful, wanton and done with reckless disregard of Jared's rights, entitling Jared to an award of punitive damages.

## COUNT TWO
### (Attorneys' Fees)

42.     Jared realleges all previous material paragraphs.

43.     For nearly a full year after Jared's injuries, Nationwide refused to pay the full amount of his loss.

44.     Nationwide refused to alter its settlement position, even though it knew its offer was unreasonably low and that its justifications for the lowball offer were invalid and specious.

45.     Nationwide's refusal to pay the full amount of Jared's loss was vexatious or without reasonable cause and Jared is entitled to attorney's fees pursuant to SDCL § 58-12-3.

## **PRAYER FOR RELIEF**

WHEREFORE, Jared prays for the following relief:

(1)     For his compensatory, general, special and punitive damages in an amount that is deemed just and proper under the circumstances;

(2)     For attorneys' fees, pursuant to SDCL 58-12-3;

(3)     For his costs and disbursements herein;

(4)     For pre-judgment and post-judgment interest;

(5)     For such other and further relief as the Court deems just and proper.

Dated this 14th day of February, 2017.

> **Johnson, Miner, Marlow,**
> **Woodward & Huff, Prof. LLC**
>
> _____
> Michael F. Marlow
> 200 West Third Street
> P.O. Box 667
> Yankton, SD 57078
> (605) 665-5009
> Email: mikem@jmmwh.com
>
> *Attorneys for Plaintiffs*